[No. 44424.   En Banc.   May 26, 1977.]

THE STATE OF WASHINGTON, *Appellant,* v. CHARLES L. TOURTELLOTTE, *Respondent.*

Donald C. Brockett, Prosecuting Attorney, and LeRoy C. Kinnie and James M. Parkins, Deputies, for appellant.

Francis J. Conklin, Special Public Defender, and John P. Nollette, Assistant, for respondent.

DOLLIVER, J.—On February 7, 1975, Charles L. Tourtellotte was charged with the crime of second–degree arson. The fire upon which the charge was based involved three mobile homes and adjacent buildings located in Spokane County. The loss was in excess of $160,000. Tourtellotte had arranged for one Harry Elzie actually to set the fire while Tourtellotte was in Seattle. He was to pay Elzie $200 and an automobile.

On February 13, 1975, Tourtellotte, at his arraignment, entered a plea of guilty to the charge of second–degree arson. At this time, the trial court observed:

In view of the statement of counsel and the statement of the defendant in answer to the question of this Court, I feel that although the language on the Statement of Defendant on Plea of Guilty is to some extent equivocal, that there is reason for this Court to consider that the

plea is sufficiently voluntary and intelligently made so as to accept it, and I will so accept it.

At the conclusion of the February 13 hearing, the court ordered a presentence investigation. At no time during these proceedings was there any question raised by Tourtellotte, his counsel or counsel for the State as to the validity of the plea.

From the statement of defendant on plea of guilty and from testimony at the February 13 hearing, it was disclosed that a plea bargaining had taken place and, in return for the plea of guilty on the arson charge, the prosecuting attorney agreed (1) not to pursue any larceny charge or charges; (2) to make no recommendation regarding sentencing; and (3) to recommend continued release on bond pending presentence investigation. The statement of defendant on plea of guilty was signed by the trial judge. At no time during this proceeding was there the slightest suggestion by the prosecuting attorney that this agreement would not or should not be honored.

On May 7, 1975, the parties reappeared before the court for sentencing. At that time, the alleged victims of the arson appeared and objected strongly to the plea bargaining. The record indicates knowledge of the plea bargaining was not conveyed to the victims until shortly before the May 7 hearing. After listening to the victims and counsel for both parties, the court granted the motion of the State to have the plea of guilty by the defendant to second-degree arson withdrawn, and directed the prosecution to proceed to trial. Counsel for defendant indicated several times during this proceeding that neither he nor his client would waive the plea–bargain agreement. In the formal order signed May 28, 1975, withdrawing the plea of guilty, the court stated, "that this order is based upon CrR 4.2(f) in that this ruling is necessary in order to correct a manifest injustice." CrR 4.2(f) reads as follows:

> The court shall allow a *defendant* to withdraw his plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice.

(Italics ours.) The case on arson was called for trial on August 25, 1975, at which time the court granted a motion by defendant to dismiss on grounds of double jeopardy. On November 3, 1975, the prosecuting attorney filed an information charging defendant with three counts of grand larceny. These charges were the same ones which were subject of the plea–bargaining agreement. Defendant moved the dismissal of these charges. This motion was denied.

These two cases have been consolidated and are here on certification from the Court of Appeals, Division Three.

While the August 25 order is based on double jeopardy and the briefs of counsel argue this question, we do not believe it is necessary to consider these constitutional grounds in reaching our decision. Rather, this case involves the integrity of the plea–bargaining agreement: whether the prosecuting attorney is bound by the agreement once it has been made, and whether the court is bound by the agreement once it has been accepted.

The United States Supreme Court in *Santobello v. New York,* 404 U.S. 257, 260, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971), succinctly spelled out the reasons for the plea–bargaining process:

> The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining," is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full–scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.
>
> Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the

rehabilitative prospects of the guilty when they are ultimately imprisoned. See *Brady* v. *United States,* 397 U. S. 742, 751–752 (1970).

A plea of guilty constitutes a waiver of significant rights by the defendant, among which are the right to a jury trial, to confront one's accusers, to present witnesses in one's defense, to remain silent, and to be convicted by proof beyond all reasonable doubt. *Santobello v. New York, supra* (Douglas, J., concurring); *In re Salter,* 50 Wn.2d 603, 313 P.2d 700 (1957). The court has a responsibility before accepting a plea of guilty to address the defendant and determine that he understands the nature of the charge against him and that the plea is voluntary. The court must ascertain the terms of the plea negotiation, whether promises or threats were used to obtain the plea, and it must advise the defendant which terms are and which terms are not binding upon the court. The court should inquire to determine that there is a factual basis for the plea. It should inform the defendant of the right being waived by entering the guilty plea, the maximum sentence on the charge, the mandatory minimum sentence and any different or additional punishment the defendant may be subject to as a result of previous convictions. *See Garrison v. Rhay,* 75 Wn.2d 98, 449 P.2d 92 (1968). The judge's role is not that of a party to the negotiation but rather as an examiner to assure that the plea procedure is characterized by fairness and candor. The judge must insure the propriety of the final disposition of the case. ABA *Project on Standards for Criminal Justice: Standards Relating to Pleas of Guilty* §§ 1.4–1.6 (Approved Draft 1968); The President's Commission on Law Enforcement and Administration of Justice, *The Challenge of Crime in a Free Society* 134–36 (1967).

In contrast to most cases where a defendant claims his rights were violated in the plea–bargaining process, no such contention is made by defendant here. Nor is there an attack by either party on the wisdom or constitutionality of plea bargaining. *See Restructuring the Plea Bargain,* 82 Yale L.J. 286 (1972); *The Legitimation of Plea Bargaining:*

*Remedies for Broken Promises,* 11 Am. Crim. L. Rev. 771 (1973); N. Morris, *The Future of Imprisonment* 28, 50 (1974).

Upon the motion of the defendant, withdrawal of a plea may be allowed to correct a "manifest injustice." CrR 4.2(f). *See State v. Taylor,* 83 Wn.2d 594, 521 P.2d 699 (1974); ABA *Project on Standards for Criminal Justice: Standards Relating to Pleas of Guilty* § 2.1 (Approved Draft 1968). There is no comparable provision in either the ABA Standards or our court rules providing for the withdrawal of pleas on the state's motion. While it is conceivable that there may be circumstances under which the court may legitimately grant a state's motion to withdraw the plea, no such circumstance is presented in this case.

██ An agreement between the parties which is approved by the trial judge cannot be turned aside simply because of the exigencies of the moment. Public pressure and publicity certainly cannot justify the breach of an agreement, no matter how ill–considered the agreement may appear to have been. The prosecutor's failure to advise the alleged victims of the plea negotiations in this case was not the fault of the defendant. He should not suffer as a result of the State's oversight. If a defendant cannot rely upon an agreement made and accepted in open court, the fairness of the entire criminal justice system would be thrown into question. No attorney in the state could in good conscience advise his client to plead guilty and strike a bargain if that attorney cannot be assured that the prosecution must keep the bargain and not subvert the judicial process through external pressure whenever the occasion arises.

A plea bargain is a binding agreement between the defendant and the State which is subject to the approval of the court. When the prosecutor breaks the plea bargain, he undercuts the basis for the waiver of constitutional rights implicit in the plea. In *Santobello v. New York, supra* at 263, the United States Supreme Court noted that there are two alternative forms of relief available to the defendant

under these circumstances. The court can permit the accused to withdraw his plea and be tried anew on the original charges, or grant specific performance of the agreement. *See* 11 Am. Crim. L. Rev., *supra* at 771; *Darnell v. Timpani,* 68 Wn.2d 666, 414 P.2d 782 (1966). In a concurring opinion, Justice Douglas emphasized that "a court ought to accord a defendant's preference considerable, if not controlling, weight inasmuch as the fundamental rights flouted by a prosecutor's breach of a plea bargain are those of the defendant, not of the State." *Santobello v. New York, supra* at 267.

Under the facts of this case, we find that specific performance is the only adequate remedy available to the defendant. To place the defendant in a position in which he must again bargain with the state is unquestionably to his disadvantage. The security he had gained as a result of the plea negotiation from being charged with the more grievous offense would be lost. *See State v. Wolske,* 280 Minn. 465, 160 N.W.2d 146 (1968); *State v. Mockosher,* 205 La. 434, 17 So. 2d 575 (1944). The defendant is entitled to the benefit of his original bargain. *See Bookout v. State,* 243 So. 2d 188 (Fla. Dist. Ct. App. 1971); *United States v. Ewing,* 480 F.2d 1141 (5th Cir. 1973). As was held in *Courtney v. State,* 341 P.2d 610, 612 (Okla. Crim. 1959), in regard to a similar matter:

> If we do not enforce the agreement, the state would be permitted to play fast and loose with an accused's constitutional rights to its advantage and his detriment.

The State urges the applicability of CrR 4.2(f). It does not apply. The rule is clear and unambiguous: "[W]henever it . . . is necessary to correct a manifest injustice", the court "*shall allow a defendant* to withdraw his plea of guilty". (Italics ours.) At no time during the proceedings did defendant withdraw his plea or evidence any desire to withdraw his plea. The motion to withdraw was made by the State. The defendant was not "allow[ed] . . . to withdraw his plea of guilty"; he had it withdrawn from him after the court had previously fully considered the plea and

586

had accepted it without equivocation or reservation. *See generally* Fischer, *Beyond Santobello—Remedies for Reneged Plea Bargains,* 2 San. Fern. V. L. Rev. 121 (1973).

The information for the three counts of grand larceny will be dismissed with prejudice; the plea of guilty to second–degree arson entered on February 13, 1975, will be entered; the trial court will proceed to sentence the defendant on this plea.

It is so ordered.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and HICKS, JJ., concur.