949 P.2d 358 (1998)
134 Wash.2d 176
STATE of Washington, Respondent,
v.
Ronald TALLEY, Petitioner.
No. 64893-0.
Supreme Court of Washington, En Banc.
Argued September 24, 1997.
Decided January 8, 1998.
*359 Nielsen, Broman & Associates, James Dixon, Eric Nielsen, Seattle, for petitioner.
Norm Maleng, King County Prosecutor, Erin Riley, Deputy Conty Prosecutor, Seattle, for respondent.
ALEXANDER, Justice.
The primary issue presented by this appeal is whether a prosecutor who enters into a plea agreement that requires the State to recommend a standard range sentence, upon the defendant's plea of guilty, breaches that agreement by participating in a court *360 ordered evidentiary sentencing hearing. We hold that the prosecutor's participation, by itself, does not undercut such a plea bargain and thereby violate the plea agreement. Consequently, we affirm the Court of Appeals' decision to remand this case for an evidentiary hearing and resentencing before a judge other than the one who earlier imposed an exceptional sentence on Talley.
Ronald Talley was charged in King County Superior Court with one count of second degree rape. RCW 9A.44.050(1). The charge arose out of an incident at the now defunct Oz nightclub in Seattle, which culminated in D.T. complaining to the Seattle Police Department that Talley forcibly raped her. Talley admitted hitting the woman but claimed that the sexual relations were consensual. The case proceeded to a jury trial, but the trial judge declared a mistrial when the jury indicated that it could not reach a verdict. Thereafter, a deputy prosecutor and Talley entered into a plea bargain agreement in which the deputy agreed, on behalf of the State, to amend the charge against Talley to third degree rape in return for Talley's guilty plea to the amended charge. RCW 9A.44.060. Talley then entered a so-called Alford plea of guilty to the amended charge of third degree rape.[1] In his statement on plea of guilty, Talley indicated he was giving "the court ... permission to review the certification for determination of probable cause and [the] police reports for this plea...." Clerk's Papers at 71.
Following Talley's entry of a guilty plea, a sentencing hearing was conducted before a superior court judge who had not presided at Talley's earlier trial. The victim and Talley, as well as family and friends of both, and members of a rape victims support group, testified at this hearing. Consistent with the terms of the plea agreement the deputy prosecutor recommended a sentence of 12 months, the high end of the standard range. The sentencing judge was also presented with a report from a community correction officer who recommended an exceptional sentence of 24 months. Talley's counsel recommended a sentence within the standard range, but expressed concern at this hearing that the sentencing judge might rely upon facts not stipulated to by Talley, including the allegations contained in the certification for determination of probable cause, and impose an exceptional sentence. The sentencing judge responded, "I am giving an exceptional sentence, and I'll give you a time for an evidentiary hearing." Verbatim Report of Proceedings (Aug. 11, 1995) at 15. The judge then adjourned the hearing and scheduled an evidentiary hearing for a later date.
At an intervening hearing held at Talley's request, Talley's counsel again objected to the sentencing court's consideration of the certification for determination of probable cause, and any other facts not stipulated to, as a basis for imposing an enhanced sentence. Talley's counsel argued that because Talley had entered an Alford plea and there had been no evidentiary hearing, there were no facts before the court upon which it could base an exceptional sentence. Counsel asserted further that there could be no "real facts" hearing because the prosecutor's participation at any such hearing would undermine the plea agreement with Talley. In response, the sentencing judge announced that she was canceling the evidentiary hearing, indicating that she "understood [the defense was] asking for an evidentiary hearing. But if [it is] not asking for an evidentiary hearing, I'm not going to hold one." Verbatim Report of Proceedings (Aug. 24, 1995) at 6.
At a later sentencing hearing, the deputy prosecutor again recommended a standard range sentence. Defense counsel reiterated her recommendation for a standard range sentence, noting that she had submitted a presentence memorandum and transcripts of testimony from the aborted trial for the sentencing judge's consideration. After reviewing police reports and the State's certification for determination of probable cause, among other items, the sentencing court imposed an exceptional sentence of 24 months, citing deliberate cruelty, multiple incidents of intercourse, and the negative impact the rape would have on the rape victim as the aggravating *361 circumstances justifying an exceptional sentence.[2] In support of the exceptional sentence the sentencing court entered findings of facts, as follows:
1. On July 30, 1994, while at the Oz nightclub in Seattle, King County, Washington, the defendant approached [D.T.] under the pretext of asking her to dance.
2. The defendant had no intention of dancing with [D.T.], but instead intended to take her to an isolated, dark stairwell within the nightclub.
3. The defendant had been to that stairwell earlier in the evening and knew it was dark and isolated.
4. Once in the stairwell, the defendant demanded oral sex from [D.T.], which she performed without her consent.
5. After the oral rape, the defendant had penile-vaginal intercourse with [D.T.] without her consent.
6. [D.T.] clearly expressed her lack of consent to the defendant, including telling him that she was a virgin.
7. As a result of the vaginal rape, and consistent with her lack of prior sexual intercourse, [D.T.] suffered tears to her vagina.
8. During the course of the rapes, the defendant hit [D.T.] in the head repeatedly and bit her on the chest.
9. During the course of, and after, the rapes, the defendant referred to [D.T.] as a "bitch" and a "whore".
10. After raping [D.T.], the defendant left her in the stairwell nude, hysterical, and bleeding from her vagina.
11. The defendant exhibited an extreme indifference to [D.T.'s] well-being.
12. The defendant's actions were deliberately cruel, exceeding that which was necessary to commit rape.
13. As a result of the rapes, [D.T.] and her family have been extremely traumatized.
14. [D.T.] has lost her ability to trust others, is very fearful, suffers from nightmares, and has required long-term therapy.
15. [D.T.] has found it difficult to impossible to commence a romantic relationship with a man as a result of the rapes.
Clerk's Papers at 80-81.
Talley appealed the exceptional sentence to Division One of the Court of Appeals. He urged the Court of Appeals to reverse the sentence and remand with instructions to impose a standard range sentence. The Court of Appeals reversed the sentence, concluding that the sentencing court had violated the Sentencing Reform Act of 1981[3] by relying on facts that were not acknowledged or admitted by Talley or proven by a preponderance of the evidence at an evidentiary hearing, and consequently "may have prejudged the matter." State v. Talley, 83 Wash.App. 750, 763, 923 P.2d 721 (1996), review granted, 131 Wash.2d 1023, 937 P.2d 1102 (1997). It remanded for an evidentiary hearing and sentencing before a different judge. In addition, it rejected Talley's contention that the State's participation in an evidentiary hearing would constitute a breach of the plea agreement. Finally, it held that deliberate cruelty or multiple acts of rape, if proven at the evidentiary hearing, could form the basis of an exceptional sentence. Talley, 83 Wash.App. 750, 923 P.2d 721.[4]
*362 Talley sought review here, claiming that the Court of Appeals erred in concluding that: (1) the State would not violate the plea bargain agreement by participating in an evidentiary hearing; and (2) on resentencing, the sentencing court could consider deliberate cruelty and multiple acts as potential justification for an exceptional sentence. We granted review.
When Talley and the State entered into their plea bargain agreement they formed a contract. State v. Wakefield, 130 Wash.2d 464, 925 P.2d 183 (1996); State v. Arko, 52 Wash.App. 130, 758 P.2d 522 (1988). Pursuant to that agreement, Talley agreed to give up his right to a trial and plead guilty in exchange for the State's agreement to reduce the charge to third degree rape and recommend a standard sentencing range of 6-12 months.[5] Talley kept his end of the bargain by pleading guilty to the amended charge. However, by entering a so-called Alford plea to the charge he did not admit the allegations contained in the certification for probable cause, notwithstanding his stipulation that the plea judge could consider it in determining the validity of the guilty plea. State v. Young, 51 Wash.App. 517, 754 P.2d 147 (1988).
The State is also obligated to adhere to the terms of a plea agreement by recommending the agreed upon sentence. State v. Coppin, 57 Wash.App. 866, 791 P.2d 228, review denied, 115 Wash.2d 1011, 797 P.2d 512 (1990). Although the recommendation need not be made enthusiastically, the prosecutor is obliged to act in good faith, participate in the sentencing proceedings, answer the court's questions candidly in accordance with RPC 3.3 and, consistent with RCW 9.94A.460, not hold back relevant information regarding the plea agreement.[6]State v. Sledge, 133 Wash.2d 828, 947 P.2d 1199 (1997). Although the State does not breach the agreement by not advocating for the sentence beyond making the bargained for recommendation, it has an obligation not to undercut a plea bargain with a defendant. In re Palodichuk, 22 Wash.App. 107, 110, 589 P.2d 269 (1978).
Talley does not suggest that the State has failed to comply with the plea bargain up to this time. He contends, rather, that the State's participation in an evidentiary hearing to present evidence that may support factual findings justifying imposition of an exceptional sentence would undercut the plea bargain. Whether or not that is the case is the central issue before us. It is an issue that has not been previously confronted by this court.
At the outset, we note that we are in agreement with the view expressed by the Court of Appeals in Palodichuk that prosecutorial conduct is very important to the integrity of the plea bargaining process, and that a prosecutor must adhere to the terms of the plea agreement and avoid tainting the sentencing process. Palodichuk, 22 Wash. App. at 109-11, 589 P.2d 269. Talley suggests that under the holding in Palodichuk, which he cites as support for his position, the State is barred from participating in a "real facts" hearing because in doing so it would undercut the plea agreement.
The facts in Palodichuk were that the State had entered into a plea bargain with the defendant which required the State to recommend a suspended sentence and four years probation. The deputy prosecutor fulfilled that promise by making the agreed upon recommendation to the sentencing judge. He did not stop there, however, but went on to express reservations about the agreement, indicating that the State had received new information about the defendant's *363 past record as a probationer. This information, the deputy prosecutor indicated, had caused him to have "second thoughts about that recommendation." Palodichuk, 22 Wash.App. at 109, 589 P.2d 269. On review, the Court of Appeals concluded that by expressing reservations about its recommendation to the sentencing judge, the State had undercut the agreed upon terms of the plea bargain and thereby breached the plea agreement.
The State responds that the instant case is more analogous to Coppin, and asserts that it supports its contention that a prosecutor does not undercut a plea agreement by merely participating in an evidentiary hearing. In Coppin, consistent with the plea agreement, a deputy prosecutor recommended a sentence at the high end of the standard range. At the same time the deputy submitted a California probate report to the sentencing court which described the defendant's prior convictions and his lack of amenability to treatment. After reviewing the report, the sentencing judge asked the deputy prosecutor to explain why he was not seeking an exceptional sentence. In response to the judge's inquiry, the deputy prosecutor stated, "Number one, your honor, it was not decided that an exceptional sentence could be qualified. The children involved had considerable difficulty isolating the specific events. That was one reason. Second was to save the children from having to go through a trial." Coppin, 57 Wash.App. at 869, 791 P.2d 228. The sentencing judge then asked the deputy prosecutor whether he believed an exceptional sentence was not legally justified, or whether he was merely adhering to the terms of the plea bargain in making his recommendation. The deputy prosecutor replied that were it not for the plea bargain, he would have sought an exceptional sentence. The trial judge then imposed an exceptional sentence.
On review, the Court of Appeals concluded that the deputy prosecutor's explanation of his reasons for recommending a standard range sentence and bare submission of documents, although prejudicial to Coppin, did not constitute a breach of the plea agreement. Coppin, 57 Wash.App. at 875 n. 6, 791 P.2d 228. The Coppin court contrasted the actions of the deputy prosecutor to those of the deputy prosecutor in Palodichuk, stressing the deputy prosecutor's comments in Coppin did not contain subjective reservations about the recommended sentence and were given only in response to a direct inquiry by the court. The court cited RPC 3.3 and concluded that as an officer of the court, the deputy prosecutor had no choice but to answer the questions honestly. Coppin, 57 Wash.App. at 875, 791 P.2d 228; see also State v. Gutierrez, 58 Wash.App. 70, 76, 791 P.2d 275 (1990) ("A prosecutor is entitled to present all relevant facts, whether or not they fully support his [or her] recommendation."); State v. Davis, 43 Wash.App. 832, 837, 720 P.2d 454 ("prosecutor did not breach the agreement by informing the court of the two witnesses' concern and their wish to testify"), review denied, 106 Wash.2d 1017 (1986).
Although we believe that the Palodichuk and Coppin decisions are both sound, neither is precisely on point because in those cases the defendants did not enter Alford pleas and, thus, there were facts known to the court about those defendants' conduct in committing the charged offenses. Coppin, though, is more instructive of the two cases because it concerns the prosecutor's response to the sentencing court's initiative. Adopting its reasoning, we conclude that while the deputy prosecutor is obliged to make the agreed upon sentencing recommendation to the sentencing court at the sentencing hearing, mere participation by the deputy in an evidentiary hearing does not undercut the State's agreed upon recommendation. If we were to conclude otherwise, the sentencing court would be faced with a one-sided hearing, a circumstance that would not promote the ends of justice. In this regard, we believe the Court of Appeals was correct here when it indicated:
[T]he prosecutor has an obligation as an officer of the court to participate in the hearing and present evidence that will help the court make its decision. Presenting evidence that will help the court make a decision does not amount to advocating against its earlier recommendation. Thus, *364 it does not violate the terms of the plea agreement.
Talley, 83 Wash.App. at 759, 923 P.2d 721.
Although we conclude that the prosecutor's participation in an evidentiary hearing does not, by itself, violate the plea agreement, we recognize that the State could violate the agreement by advocating for an exceptional sentence in the way that it presents evidence at the evidentiary hearing and in making its sentencing recommendation to the court. While, as we have observed, merely presenting relevant evidence to the sentencing court and responding to its inquiries is an appropriate fulfillment of the prosecutor's duty as an officer of the court, a deputy prosecutor could easily undercut the plea agreement by placing emphasis on the evidence that supports findings that aggravating factors are present.
Indeed, that is precisely what happened in State v. Sledge, 947 P.2d 1199 (1997), a case that was very recently before this court. In Sledge, the deputy prosecutor had agreed to recommend a standard range sentence for a juvenile defendant. At a disposition hearing, in addition to submitting a probation counselor's "manifest injustice report" for the court's consideration, the deputy prosecutor also called the probation counselor to testify about the report. The deputy prosecutor then led the counselor through her report, extensively examining her about the factors that caused her to recommend an exceptional sentence. The deputy prosecutor also presented testimony by the juvenile's parole officer who testified about the defendant's prior problems at a juvenile institution. Finally, the deputy prosecutor gave a detailed and lengthy summary of the aggravating factors, that supported an exceptional disposition. The effect of the deputy prosecutor's presentation, we concluded, was to undermine the plea agreement. In reaching this conclusion, we emphasized the point that if the State's purpose was to have the sentencing court impose a standard range sentence, there was no need for the State to insist upon a hearing with witnesses, as the probation counselor's report was before the court.
We wish to stress that we are not indifferent to the difficulties the State may face in maintaining a balance between, on the one hand, its duty to present relevant evidence and respond to the sentencing court's inquiries, and on the other, its equally important obligation not to undercut the plea agreement. Although we are not able to forge a rule of general application that establishes a bright line between adherence and undercutting, we can indicate that the State will not violate its duty of good faith and fair dealing by participating in an evidentiary hearing and presenting evidence to assist the sentencing court, so long as it does not, by its words and conduct at that hearing, contradict its recommendation for a standard range sentence.
Finally, as noted above, the Court of Appeals also held that deliberate cruelty and multiple acts of penetration, if proven at the evidentiary hearing, could be considered by the sentencing judge as reasons for imposing an exceptional sentence. Talley contends that consideration of facts necessary to prove these aggravating factors by the sentencing court would violate the real facts doctrine. Because we are upholding the Court of Appeals' decision to reverse Talley's sentence and remand for an evidentiary hearing, there are no facts or findings before the court and it is not appropriate for us to speculate about what facts may be proven at such a hearing. We, therefore, decline to address that contention.
We affirm the Court of Appeals' decision ordering an evidentiary hearing before a different sentencing judge, as well as its conclusion that the prosecuting attorney's participation in that hearing, by itself, would not constitute a breach of the plea agreement between Talley and the State.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, TALMADGE and SANDERS, JJ., concur.
NOTES
[1] See North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (defendant may plead guilty while disputing the facts alleged by the State).
[2] The other items reviewed by the sentencing judge included: presentence memoranda submitted by Talley, the State, and the Department of Corrections; letters from the victim, the victim's family, and friends; letters from the defendant's family and friends; a transcript of testimony of witnesses who had testified at the earlier trial; and testimony at the original sentencing hearing from the victim, the defendant and family, and friends of each.
[3] RCW 9.94A.370(2) states:

"In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. Acknowledgment includes not objecting to information stated in the presentence reports. Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point. The facts shall be deemed proved at the hearing by a preponderance of the evidence."
[4] The State conceded at the Court of Appeals that negative impact of the crime on the victim was not so distinctive in this case that it justified an exceptional sentence. Talley, 83 Wash.App. at 760, 923 P.2d 721.
[5] Plea bargains are authorized by RCW 9.94A.080(4).
[6] RPC 3.3 states:

"(a) A lawyer shall not knowingly:
"(1) Make a false statement of material fact or law to a tribunal."
"A prosecutor, like any other attorney, has a duty of candor toward the tribunal which precludes it from making a false statement of material fact or law to such tribunal." Coppin, 57 Wash.App. at 874 n. 4, 791 P.2d 228.
RCW 9.94A.460 states in part:
"The prosecutor shall not agree to withhold relevant information from the court concerning the plea agreement."