[No. 24237-1-II.   Division Two.   November 3, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM TELL
WILLIAMS, *Appellant*.

232

*Pattie Mhoon*, for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney*, and *Michelle Luna-Green, Deputy*, for respondent.

BRIDGEWATER, J. — William Tell Williams appeals his conviction of rendering criminal assistance in the first degree on the basis that the State breached the plea

agreement. The State agreed to recommend a standard range sentence, but the trial court imposed the maximum sentence allowed under the statute. We hold that by submitting a sentencing memorandum that: (1) set forth "aggravating circumstances" for an exceptional sentence, (2) explicitly stated that the court had "authority" to impose an exceptional sentence, and (3) emphasized that protection of the public required "at least" the high end of the standard range, the State has undercut the agreement. The prosecutor further qualified his recommendation several times at the sentencing hearing stating that: (1) Williams should get the 12-month high end sentence "at a minimum"; (2) Williams should get "at least" 12 months; and (3) a 12-month sentence was the "most leniency" he should receive. Report of Proceedings (Dec. 17, 1999) at 4, 9, 24. We reverse and remand for proceedings consistent with this opinion.

Williams was charged with rendering criminal assistance in the first degree to Troy Williams, Charles Williams, and Christopher Williams by "aiding in concealing, altering or destroying physical evidence, to wit: the body of the victim [David Wood], that might aid in the discovery or apprehension of [Troy, Charles, and Christopher Williams]." Clerk's Papers at 1. Williams, the defendant, was the manager at the apartment complex where Troy, Charles, and Christopher Williams murdered David Wood. The State and Williams entered into a plea agreement. The State agreed to charge Williams only with rendering criminal assistance in the first degree and to recommend a sentence within the standard range. Williams entered an *Alford* plea to rendering criminal assistance in the first degree. *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). In his *Alford* plea, he stated "without admitting guilt, but admitting that there are facts sufficient to be found guilty, I desire to be found guilty to take advantage of the state[']s offer." Clerk's Papers at 10. Under the plea agreement, the State agreed to recommend a sentence of 12 months in jail, which was within the standard range of 6 to 12 months.

The State submitted a sentencing memorandum and argued at the sentencing hearing that the trial court should

impose the high end of the standard range, 12 months. The presentence investigation recommended 12 months of confinement. Defense counsel advocated a six-month sentence, the low end of the sentencing range. The State listed and argued eight aggravating factors in support of its position. The court also heard victim impact statements from two relatives of Wood. They both requested imposition of the maximum exceptional sentence.

The court sentenced Williams to five years, the maximum sentence. The court found the following aggravating factors were substantial and compelling reasons for the exceptional sentence: prior criminal misdemeanors; vulnerability of the victim; aiding and abetting in the mutilation of human remains; deliberate cruelty and unusual means; hiding evidence; active involvement for money; abuse of his position of trust; and lack of remorse.

## PLEA AGREEMENT

A. Waiver

■ The State argues that Williams, by failing to object or move to set aside the plea below, waived his argument that the State breached the plea agreement. We generally will not review an assignment of error raised for the first time on appeal. RAP 2.5(a); *State v. Williams*, 137 Wn.2d 746, 749, 975 P.2d 963 (1999). But we will review an issue if it pertains to a manifest error affecting a constitutional right. RAP 2.5(a)(3); *Williams*, 137 Wn.2d at 749. To be considered "manifest," the facts necessary to review the claimed error on appeal must be in the record and the defendant must show actual prejudice. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).

■ We recently held in *State v. Van Buren*, 101 Wn. App. 206, 211-12, 2 P.3d 991 (2000), that under RAP 2.5(a)(3) a breach of a plea agreement is an issue of constitutional magnitude, and we will address the issue despite the defendant's failure to object or move to set aside the plea below. In *Van Buren*, we stated that a "defendant gives up

important constitutional rights by agreeing to a plea bargain[.]" *Van Buren*, 101 Wn. App. at 211 (citations omitted). "A breach of a plea agreement is a violation of due process." *Van Buren*, 101 Wn. App. at 211 (citing *Mabry v. Johnson*, 467 U.S. 504, 104 S. Ct. 2543, 81 L. Ed. 2d 437 (1984) ("when the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand"); *see also State v. Wakefield*, 130 Wn.2d 464, 472, 925 P.2d 183 (1996) (breach of plea agreement is criteria for determining whether "manifest injustice" mandates withdrawal of guilty plea under CrR 4.2(f)).

Thus, this case involves a constitutional right. Further, as discussed below, the State's comments affected the court's sentencing decision. *See Van Buren*, 101 Wn. App. at 212. If there was a breach of the plea agreement in this case, there was prejudice. As we explained in *Van Buren*, the State's authority of *State v. Giebler*, 22 Wn. App. 640, 591 P.2d 465, *review denied*, 92 Wn.2d 1013 (1979), is inapposite. *Van Buren*, 101 Wn. App. at 212. Consequently, we consider Williams' appeal under RAP 2.5(a)(3).

B. Breach of the Plea Agreement

Plea agreements are contracts, and the law imposes upon the State an implied promise to act in good faith. *State v. Sledge*, 133 Wn.2d 828, 838-39, 947 P.2d 1199 (1997). Because a defendant gives up important constitutional rights by agreeing to a plea bargain, the State must adhere to its terms by recommending the agreed-upon sentence to the court. *State v. Jerde*, 93 Wn. App. 774, 780, 970 P.2d 781 (citing *State v. Talley*, 134 Wn.2d 176, 183, 949 P.2d 358 (1998)), *review denied*, 138 Wn.2d 1002 (1999).

> Although the recommendation need not be made enthusiastically, the prosecutor is obliged to act in good faith, participate in the sentencing proceedings, answer the court's questions candidly in accordance with [the duty of candor toward the tribunal] and, consistent with RCW 9.94A.460, not hold back relevant information regarding the plea agreement.

*Jerde*, 93 Wn. App. at 780 (quoting *Talley*, 134 Wn.2d at

183). At the same time, the State must not undercut the terms of the agreement. *Talley*, 134 Wn.2d at 183; *Sledge*, 133 Wn.2d at 840; *Jerde*, 93 Wn. App. at 780. The State can undercut a plea agreement either explicitly or implicitly through conduct indicating an intent to circumvent the agreement. *Sledge*, 133 Wn.2d at 840; *Van Buren*, 101 Wn. App. at 213.

■ "We apply an objective standard in determining whether the State breached a plea agreement ' " 'irrespective of prosecutorial motivations or justifications for the failure in performance.' " ' " *Van Buren*, 101 Wn. App. at 213 (quoting *Jerde*, 93 Wn. App. at 780 (quoting *In re Personal Restraint of Palodichuk*, 22 Wn. App. 107, 110, 589 P.2d 269 (1978))). "The test is whether the prosecutor contradicts, by word or conduct, the State's recommendation for a standard range sentence." *Jerde*, 93 Wn. App. at 780 (citing *Talley*, 134 Wn.2d at 187). In making this determination, we view the entire sentencing record. *Van Buren*, 101 Wn. App. at 214.

■ The State submitted a sentencing memorandum and also argued at the sentencing hearing. The State concluded its memorandum by recommending 12 months in jail. The State maintains that its memorandum and oral argument were just zealous and persuasive argument for the high end of the standard range. We disagree and address both the sentencing memorandum and the oral argument.

The sentencing memorandum was 16 pages long. One portion was entitled Law, and was divided into three sections: (1) Sentencing Reform Act Generally, (2) Standard Range, and (3) Exceptional Sentence Generally. The third section was divided into two separate subsections addressing mitigating and aggravating circumstances. We find it significant that while the State argues that these factors were not meant to advocate an exceptional sentence the subheading on aggravating circumstances is listed with the exceptional sentence. No such subheading appears for reasons to impose a sentence at the high end of the range. In the Argument section, the memorandum listed eight factors

justifying imposition of a sentence at the high end of the standard range:

(1)   Vulnerability of the victim;

(2)   Multiple offenses committed against the victim;

(3)   Deliberate cruelty;

(4)   Attempting to hide evidence;

(5)   Active involvement for money;

(6)   Violation of a position of trust;

(7)   Extensive misdemeanor/gross misdemeanor history not included in the standard range calculation; and

(8)   Showing no remorse.

After listing these factors the memorandum stated:

Some of these factors are statutory aggravating factors. The Court has authority, due to these factors and the other listed, to impose an exceptional sentence upwards beyond 12 months. The State is not asking for that, however, instead recommending the high-end of the range (12 months). That is the MOST leniency that should be afforded the defendant. At best, the arguments that the defense will make in favor of a lower sentence should only serve to sway the Court from an exceptional sentence upward.

Clerk's Papers at 34. In the Conclusion section, the memorandum stated: "Protection of the community requires a sentence *at least* the high-end of the standard-range." Clerk's Papers at 35.

The State began its oral argument at sentencing by asking the trial court to impose sentence at the high end of the standard range. But during argument the State made the following statements:

a. "I believe, and I would submit to the Court, that *at least* a high-end recommendation is appropriate in this particular case. I've set forth in my memorandum to the Court numerous factors, which—some of which are statutory aggravating factors, and others which simply, I believe, compound this defendant's culpability and lack of remorse."

Report of Proceedings (Dec. 17, 1999) at 4.

b. "For the defense to throw the defendant on the mercy of the Court and to beg for some leniency is certainly well within their right, but it is not a *proper resolution* to this case where he cannot even accept responsibility at all for this participation."

*Id.* at 8.

c. "[W]hat I can say to the Court is that any person who is actively involved in the chain saw mutilation of David Wood deserves, *at a minimum*, the high-end of the range."

*Id.* at 24.

The trial court imposed an exceptional sentence, adopting all eight of the factors in the State's sentencing memorandum. The court sentenced Williams to the maximum sentence, five years.

We have held that a prosecutor may reference a defendant's prior bad acts in support of an argument that the sentencing judge should impose the maximum standard range sentence. *State v. Coppin*, 57 Wn. App. 866, 875, 791 P.2d 228 (1990). In *Coppin*, the prosecutor recommended the maximum standard range of 102 months and the defense advocated for a 77-month sentence, the minimum sentence. We held that the prosecutor's actions were proper when the prosecutor presented a few aggravating factors with some argument that the sentence should be in the high-end range. We stated that "[t]he prosecutor reiterated, on numerous occasions, that the recommended sentence of 102 months was itself a severe penalty, constituting the maximum under the standard range for the offenses." *Coppin*, 57 Wn. App. at 875. In contrast, the prosecutor here qualified his recommendation several times stating: (1) that "at least a high-end recommendation is appropriate"; (2) that the "most leniency that should be shown to this defendant is the high-end of the standard range"; and (3) that he "deserves, at a minimum, the high-end of the range." Report of Proceedings (Dec. 17, 1999) at 4, 9, 24.

The prosecutor made unsolicited references to statutory aggravating factors justifying an exceptional sentence and thereby advocated for those factors. *See Jerde*, 93 Wn. App.

at 782 ("Without prompting from the court, the first prosecutor laid the foundation by articulating several factual and legal arguments that would support an exceptional sentence."). The advocating of the eight factors exceeded what was necessary in the dispute over a standard range that spanned only from 6 months to 12 months. The judge understood the prosecutor's comments as advocating an exceptional sentence because she adopted all of those recommended factors in her order. We conclude that the prosecutor did not just explain why a high-end sentence was justified for Williams; he, in effect, set forth specific grounds for imposing an exceptional sentence. In this case, the undercutting of the plea agreement was more veiled than in *Jerde* and *Van Buren*, but it is clear. Thus, the prosecutor's comments cannot be explained as simply supporting the recommended sentence; the prosecutor "effectively undercut the plea agreement in a transparent attempt to sustain an exceptional sentence." *Jerde*, 93 Wn. App. at 782.

■■ Therefore, we hold that the State has breached the plea agreement and we remand for Williams to elect either to withdraw his guilty plea or to enforce the plea bargain agreement. *Van Buren*, 101 Wn. App. at 218; *Jerde*, 93 Wn. App. at 782-83. If Williams elects the latter, he is entitled to a new sentencing hearing in front of a different judge. At this hearing, the State must present the agreed-upon sentencing recommendation without equivocation. *Van Buren*, 101 Wn. App. at 218; *see also In re Personal Restraint of Powell*, 117 Wn.2d 175, 199, 814 P.2d 635 (1991). Of course, the sentencing court retains the discretion to accept or reject the recommendation. *Van Buren*, 101 Wn. App. at 218.

Because of our decision, we do not consider Williams' other assignments of error.

Reversed and remanded.

ARMSTRONG, C.J., and MORGAN, J., concur.

Review denied at 143 Wn.2d 1011 (2001).